UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| OHIO CHAMBER OF COMMERCE, INC., and OHIO CHAMBER OF COMMERCE PAC,<br><br>*Plaintiffs*,<br><br>v.<br><br>FRANK LAROSE, in his official capacity as Secretary of State of Ohio; DAVE YOST is his official capacity as Attorney General of Ohio; OHIO ELECTIONS COMMISSION; and CHARLETA B. TAVARES, CHRISTINA M. HAGAN, STEPHEN CARAWAY, SHAYLA L. DAVIS, KARL C. KERSCHNER, ERNEST C. KNIGHT, and JOHN A. LYALL, in their official capacities as members of the Ohio Elections Commission,<br><br>*Defendants*. | No. 24-cv-325 |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiffs Ohio Chamber of Commerce, Inc. (the "Chamber") and Ohio Chamber of Commerce PAC ("OCCPAC"), by and through undersigned counsel, allege as follows in support of their request for a declaratory judgment and injunctive relief:

**Nature of the Action**

1. This is an action seeking declaratory and injunctive relief from enforcement of Ohio law in violation of the Plaintiffs' federal rights. Plaintiffs are Ohio's leading advocate of the interests of Ohio's business community and its associated political action committee. But for Ohio law prohibiting them from doing so, the Chamber would make political contributions in support of its preferred

candidates and campaigns, and OCCPAC, which does make political contributions, would accept contributions from the Chamber's corporate members. Ohio campaign-finance law, as interpreted and enforced by Defendants, conflicts with the First Amendment and Equal Protection Clause because it permits labor unions to make political contributions while prohibiting corporations from doing so. Labor unions have taken advantage of their special status under Ohio law to direct millions of dollars in contributions to their favored candidates and campaigns. Yet Ohio law absolutely bars members of Ohio's business community from responding in kind, from engaging in the same sort of speech and association as labor unions by supporting their preferred candidates and campaigns, and from competing on a level political playing field. There is no justification for Ohio law's disparate treatment of labor unions and business and for its restriction on the political speech and expressive association of Ohio's business community. Accordingly, Plaintiffs seek a declaration that Ohio's restriction on political contributions by corporations is unconstitutional and injunctive relief barring enforcement of that prohibition.

## Jurisdiction and Venue

2. This Court has jurisdiction over this action under 28 U.S.C. § 1331 and 1343(a) because it arises under the Constitution and the laws of the United States.

3. This Court has authority to grant declaratory and injunctive relief under 42 U.S.C. § 1983; the doctrine of *Ex parte Young*, 209 U.S. 123 (1908); the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq*.; and the All Writs Act, 28 U.S.C. § 1651.

4. This Court has personal jurisdiction over Defendants, all of whom are Ohio officials sued in their official capacities. All Defendants reside in Ohio.

5. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because, as alleged below, a substantial part of the events giving rise to the claims occurred

2

within this District and under 28 U.S.C. § 1391(b)(1) because Defendant Stephen Caraway resides in Adams County and all Defendants reside in Ohio.

6. Venue is proper in this Division under Local Rule 82.1(c) because Defendant Stephen Caraway resides in Adams County.

## Parties

7. Plaintiff Ohio Chamber of Commerce PAC is a political action committee registered with the Ohio Secretary of State. It is headquartered in Columbus, Ohio.

8. Plaintiff Ohio Chamber of Commerce, Inc., is a membership organization that champions free enterprise, economic competitiveness, and growth for the benefit of all Ohioans. It is headquartered in Columbus, Ohio.

9. Defendant Frank LaRose is the Secretary of State of Ohio and is responsible for administering and enforcing Ohio law. He is sued in his official capacity only.

10. Defendant Dave Yost is the Attorney General of Ohio and is responsible for administering and enforcing Ohio law. He is sued in his official capacity only.

11. Defendant Ohio Elections Commission (the "Commission") is an administrative body created under Chapter 3517 of the Ohio Revised Code and is responsible for enforcing Ohio election laws, including Section 3599.03 of the Ohio Revised Code.

12. Defendants Charleta B. Tavares, Christina M. Hagan, Stephen Caraway, Shayla L. Davis, Karl C. Kerschner, Ernest C. Knight, and John A. Lyall are the members of the Ohio Elections Commission and are sued in their official capacities only.

## Factual and Legal Allegations

**A.   Ohio Law's Disparate Treatment of Labor Organizations and Corporations**

13.   Ohio law permits unions, but prohibits corporations, from making political contributions. Specifically, Ohio's campaign-finance law prohibits corporations from being "political contributing entities" ("PCEs"), the vehicle through which Ohio permits certain entities that are not political action committees to make political contributions.

14.   Ohio law extensively regulates spending associated with elections.

15.   Section 3517.01(C)(5) of the Ohio Revised Code generally defines "contribution" to include all payments "made, received, or used for the purpose of influencing the results of an election." The provision of financial support to a candidate for office or a candidate's campaign committee to advance that candidate's electoral prospects is a "contribution" under this provision.

16.   Section 3517.01(C)(8) of the Ohio Revised Code generally defines "political action committee" ("PAC") to be "a combination of two or more persons, the primary or major purpose of which is to support or oppose any candidate, political party, or issue, or to influence the result of any election through express advocacy, and that is not a political party, a campaign committee, a political contributing entity, or a legislative campaign fund."

17.   Section 3517.01(C)(25) of the Ohio Revised Code generally defines "political contributing entity" as an entity "that may lawfully make contributions and expenditures and that is not an individual or a political action committee, continuing association, campaign committee, political party, legislative campaign fund, designated state campaign committee, or state candidate fund."

18.   Section 3599.03(A)(1) of the Ohio Revised Code generally provides that corporations and labor organizations may not use their money or property "for or in

4

aid of or opposition to a political party, a candidate for election or nomination to public office, a political action committee including a political action committee of the corporation or labor organization, a legislative campaign fund, or any organization that supports or opposes any such candidate, or for any partisan political purpose."

19. Violations of that prohibition are punishable by fines of up to $5,000. R.C. 3599.03(A)(2). In addition, knowing participation in a violation of that prohibition by any person, including solicitation or receipt of money in violation of it, is punishable by fines of up to $1,000 and imprisonment of not more than one year. R.C. 3599.03(B).

20. In 1998, the Ohio Court of Appeals held that language in the predecessor of current Section 3599.03(A)(1) extending its prohibition to labor organizations was facially invalid because it blocked "labor organizations from using their money to express their views on partisan electoral issues" in violation of their First Amendment rights. *UAW, Local Union 1112 v. Philomena*, 121 Ohio App.3d 760, 784–87 (Ohio App. 10th Dist. 1998).

21. In 2004, the General Assembly reenacted Section 3599.03 with a substantially similar prohibition on political activities by labor organizations.

22. The reenacted prohibition's application to labor organizations was challenged in *UAW, Local Unions 112 and 402, Region 2B v. Blackwell*, No. 05-cvh-03-2553, 2005 WL 991248 (Ohio Com. Pl. Mar. 7, 2005). Relying on *Philomena*, the trial court in that case issued a preliminary injunction prohibiting enforcement of the prohibition's extension to labor unions. *Id.*

23. Neither *Philomena* nor *Blackwell* addressed the constitutionality of Section 3599.03's prohibition on political contributions by labor organizations.

24. Nonetheless, Defendants and their predecessors in office have accepted that the extension of Section 3599.03's prohibition to labor unions is invalid and

5

unenforceable and that, as a result, labor organizations may be PCEs and make political contributions.

25. Reflecting this position, the Ohio Secretary of State's *Campaign Finance Handbook* states that "a labor organization" may be a PCE and "may lawfully make contributions." Campaign Finance Handbook 8-1 (2022).[1]

26. The Ohio Secretary of State's *Campaign Finance Handbook* recognizes that PCEs may make contributions to "county political parties, local candidate campaign committees, or local ballot issue committees," to "candidates seeking election to a district office," and to "candidates for member of the General Assembly, statewide candidate, statewide ballot issues, state political parties, or to other PCEs which contribute to those candidates or issues." *Id.* at 8-1–8.2.

27. The Ohio Secretary of State's *Campaign Finance Handbook* states that a labor organization with PCE status may make expenditures, including political contributions, from its "general fund." *Id.* at 8-11.

28. The Ohio Secretary of State's *Campaign Finance Handbook* states, "Corporations may not be PCEs." *Id.* at 8-1.

29. Similarly, the chapter of the Ohio Secretary of State's *Campaign Finance Handbook* addressing "Businesses and Labor Organizations" states, "Corporations, whether for-profit or nonprofit, are prohibited from giving money, items, personnel, space, or anything of value to: Candidate committees; Non-ballot issue PACs; Legislative campaign funds; Political party state candidate funds; or Political party general funds." *Id.* at 10-1.[2] It further states, "A labor organization

---

[1] *Available at* https://www.ohiosos.gov/globalassets/candidates/cfguide/2022/campaign-finance-handbook-chapter8.pdf.
[2] *Available at* https://www.ohiosos.gov/globalassets/candidates/cfguide/2022/campaign-finance-handbook-chapter10.pdf.

6

may use its money or property, including dues monies, to support or oppose candidates, non-ballot issue PACs, legislative campaign funds, and political parties." *Id.* at 10-2.

30. The upshot is that Ohio law permits labor organizations, including labor unions,[3] to make political contributions to candidates, political parties, and PACs, while generally prohibiting corporations, including businesses whose workers are represented by labor unions or who otherwise interact with unions or union-represented workers, from making such contributions.

31. Labor unions have taken advantage of their ability to make political contributions in Ohio. For example, unions affiliated with the Service Employees International Union ("SEIU") and AFL-CIO, both of which represent private-sector workers, have made hundreds of campaign contributions in recent election cycles.

**B. Ohio Law's Disparate Treatment Injures Plaintiffs**

32. The Chamber is a nonprofit corporation and membership organization that advocates on behalf of Ohio's business community.

33. Many of the Chamber's members are corporations doing business in Ohio.

34. Many of the Chamber's members are businesses with employees either represented by a labor union or subject to labor-union organizing activities. For example, one of the Chamber's members has employees represented by a union affiliated with the AFL-CIO.

35. The Chamber engages in extensive advocacy on issues affecting labor and employment law within Ohio and advocates positions that often run counter to those advocated by labor unions. The Chamber also advocates on other issues, such

---

[3] *See* R.C. 3517.01(18) (defining "labor organization" to include, *inter alia*, "a labor union," "a federation of labor unions," and "an auxiliary of a labor union").

7

as government spending, tax policy, and the provision of public services, where its positions are generally opposed to those advocated by labor unions.

36. Labor unions and corporations whose workers are or may be represented by labor unions, or who otherwise interact with unionized workers, generally have opposing viewpoints on issues of public policy, especially in the areas of employment law, taxation, and government spending.

37. Because the Chamber is a corporation, it is subject to Section 3599.03's prohibition and therefore generally prohibited from making political contributions.

38. But for the prohibition, the Chamber would make political contributions out of its treasury supporting candidates that share its values and priorities and would solicit additional funds from the Chamber's corporate members so that it could make further contributions to worthy candidates. If Section 3599.03's prohibition were held unenforceable, the Chamber could and would solicit such contributions from its members immediately.

39. The Chamber is already an effective fundraiser, knowledgeable of Ohio politics, and capable of administering spending programs and complying with reporting requirements. The only thing that prevents it from undertaking a political-contribution program is Section 3599.03's prohibition.

40. The Chamber sponsors a PAC, OCCPAC, that makes political contributions to candidates who demonstrate their commitment to strengthening Ohio's economic climate.

41. Section 3599.03's prohibition bars OCCPAC from soliciting and accepting contributions from corporations, including members of the Chamber, which in turn limits its ability to make political contributions.

42. But for Section 3599.03's prohibition, OCCPAC would solicit and accept contributions from corporations that it could then use to make political contributions. This is not hypothetical: a corporation located in Shelby County that

8

is a member of the Chamber is willing and able today to contribute to OCCPAC but is unable to do so because of the prohibition. If Section 3599.03's prohibition were held unenforceable, that member would make that contribution immediately, and OCCPAC would solicit further contributions from the Chamber's corporate members immediately.

## CLAIMS FOR RELIEF

### Count I

### U.S. Const., Amend. XIV, Equal Protection Clause

43. Plaintiffs hereby incorporate the preceding allegations as if fully set forth herein.

44. The Fourteenth Amendment's Equal Protection Clause protects every person's right to be free from arbitrary classifications by state government.

45. Making political contributions is First Amendment-protected political speech and association. These are fundamental rights, and disparate treatment with respect to fundamental rights must satisfy strict scrutiny.

46. Labor unions and corporations are similarly situated in all relevant respects. Federal law treats corporations and labor unions equally with respect to campaign finance. The Supreme Court has consistently spoken of labor unions and corporations as similarly situated. And any relevant state interests in the campaign finance field, such as anti-corruption and anti-circumvention interests, apply identically to corporations and labor unions.

47. Ohio law's disparate treatment of labor unions and corporations is unjustifiable. Indeed, there is a long history in Ohio of union corruption, including quid-pro-quo corruption involving public officials. Ohio's disparate treatment of labor unions and corporations is not narrowly tailored to serve any compelling state interest.

48. Accordingly, Section 3599.03's prohibition on political contributions by corporations violates Plaintiffs' rights under the Equal Protection Clause.

49. An actual controversy exists between Plaintiffs and Defendants regarding the constitutionality of Section 3599.03's prohibition on political contributions by corporations, and Plaintiffs are therefore entitled to a declaration of rights under 28 U.S.C. § 2201.

50. Unless Defendants are enjoined from this violation of Plaintiffs' rights, Plaintiffs will continue to suffer irreparable injury in the form of abridgement of their constitutional rights. Defendants will suffer no injury at all if they are enjoined from enforcing Section 3599.03's unconstitutional prohibition on political contributions by corporations. An injunction would serve the public interest by permitting Plaintiffs and the members of Plaintiff Chamber to lawfully exercise their fundamental rights.

## Count II

### U.S. Const., Amend. I, Viewpoint Discrimination

51. Plaintiffs hereby incorporate the preceding allegations as if fully set forth herein.

52. The First Amendment to the U.S. Constitution presumptively prohibits government from restricting First Amendment-protected speech and association based on viewpoint. To survive, such prohibitions must satisfy strict scrutiny.

53. Section 3599.03's prohibition distinguishes with respect to the exercise of First Amendment rights based on viewpoint. Labor unions and corporations, especially corporations whose employees are represented by labor unions or subject to union organizing, have different viewpoints on matters of labor law and policy, employment law, and a host of other issues. In permitting union political contributions and prohibiting corporate political contributions, Ohio law discriminates between these competing viewpoints.

54. This viewpoint discrimination does not satisfy strict scrutiny because it is not narrowly tailored to advance any compelling state interest. Indeed, Ohio has no legitimate interest in suppressing one viewpoint on matters of public policy while permitting the opposite viewpoint.

55. Accordingly, Section 3599.03's prohibition on political contributions by corporations is facially invalid or, alternatively, invalid as applied to corporations with employees either represented by a labor union or subject to labor-union organizing activities.

56. An actual controversy exists between Plaintiffs and Defendants regarding the constitutionality of Section 3599.03's prohibition on political contributions by corporations, and Plaintiffs are therefore entitled to a declaration of rights under 28 U.S.C. § 2201.

57. Unless Defendants are enjoined from this violation of Plaintiffs' rights, Plaintiffs will continue to suffer irreparable injury in the form of abridgement of their constitutional rights. Defendants will suffer no injury at all if they are enjoined from enforcing Section 3599.03's unconstitutional prohibition on political contributions by corporations. An injunction would serve the public interest by permitting Plaintiffs and the members of Plaintiff Chamber to lawfully exercise their fundamental rights.

## Count III

**U.S. Const., Amend I., Freedom of Speech and Association**

58. Plaintiff hereby incorporates the preceding allegations as if fully set forth herein.

59. Irrespective of any disparate treatment, Section 3599.03's blanket prohibition on political contributions by corporations violates the First Amendment's protections of the freedom of speech and association.

60. Ohio's blanket ban on political contributions by corporations prohibits core political speech and association without any tangible evidence that the ban furthers Ohio's interests in a reasonably tailored fashioned.

61. Indeed, a number of alternative paths are available that would further Ohio's purported state interests without completely stripping from a class its freedom to engage in political speech via contributions.

62. For example, an Ohio scheme that contained anti-circumvention and anti-proliferation rules, but not an outright ban on a class of political speech and association, would further Ohio's interest in preventing corruption. Instead, Ohio has used a blunt object to address a supposed problem that could be addressed with a better tailored scheme.

63. Accordingly, Section 3599.03's prohibition on political contributions by corporations violates Plaintiffs' rights under the First Amendment.

64. An actual controversy exists between Plaintiffs and Defendants regarding the constitutionality of Section 3599.03's prohibition on political contributions by corporations, and Plaintiffs are therefore entitled to a declaration of rights under 28 U.S.C. § 2201.

65. Unless Defendants are enjoined from this violation of Plaintiffs' rights, Plaintiffs will continue to suffer irreparable injury in the form of abridgement of their constitutional rights. Defendants will suffer no injury at all if they are enjoined from enforcing Section 3599.03's unconstitutional prohibition on political contributions by corporations. An injunction would serve the public interest by permitting Plaintiffs and the members of Plaintiff Chamber to lawfully exercise their fundamental rights.

## **Prayer for Relief**

Plaintiffs respectfully request that this Court enter judgment against the Defendants and provide the following relief:

A. Declare that Section 3599.03's prohibition on political contributions by corporations violates the Equal Protection Clause of the Constitution and the First Amendment;

B. Declare that Section 3599.03's prohibition on political contributions by contributions violates the First Amendment's guarantees of freedom of speech and association;

C. Enjoin defendants from enforcing Section 3599.03's prohibition on political contributions by corporations;

D. Award Plaintiffs their costs and attorney's fees; and

E. Grant such other relief as the Court deems appropriate.

Dated: June 14, 2024

Respectfully submitted,

/s/ Patrick T. Lewis
Patrick T. Lewis (0078314)
Baker & Hostetler LLP
Key Tower
127 Public Sq., Suite 2000
Cleveland, OH 44114
(216) 861-7096
plewis@bakerlaw.com

Andrew M. Grossman*
Benjamin D. Janacek*
Baker & Hostetler LLP
1050 Connecticut Ave., N.W.
Suite 1100
Washington, D.C. 20036
(202) 861-1783
agrossman@bakerlaw.com

*Attorneys for Plaintiffs*

* Motions for admission *pro hac vice* forthcoming

13