# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

OHIO CHAMBER OF COMMERCE, INC. and OHIO CHAMBER OF COMMERCE PAC,

*Plaintiffs,*

v.

FRANK LAROSE, in his official capacity as Secretary of State of Ohio; OHIO ELECTIONS COMMISSION; and CHARLETA B. TAVARES, CHRISTINA M. HAGAN, STEPHEN CARAWAY, SHAYLA L. DAVIS, KARL C. KERSCHNER, ERNEST C. KNIGHT, and JOHN A. LYALL, in their official capacities as members of the Ohio Elections Commission.

*Defendants.*

Case No. 1:24-cv-00325-JPH
Judge Jeffery P. Hopkins

**BRIEF OF *AMICUS CURIAE* CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

INTEREST OF *AMICUS CURIAE* ........ 1

INTRODUCTION ........ 2

ARGUMENT ........ 3

I. CORPORATIONS AND OTHER GROUPS PLAY A CRUCIAL ROLE IN THE AMERICAN POLITICAL SYSTEM ........ 3

II. OHIO'S LAW IMPERMISSIBLY ELEVATES LABOR ORGANIZATIONS ABOVE CORPORATIONS ........ 5

A. The First Amendment And Equal Protection Clause Mandate An Even Playing Field ........ 6

B. Ohio Law Cannot Justify Providing Special Treatment To Unions ........ 8

III. CORPORATIONS AND UNIONS MUST HAVE AN EQUAL VOICE ........ 10

CONCLUSION ........ 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Tradition P'ship, Inc. v. Bullock*,
567 U.S. 516 (2012)....................1

*Ams. for Prosperity Found. v. Bonta*,
594 U.S. 595 (2021)....................1

*Arizona Free Enterprise Club's Freedom Club PAC v. Bennett*,
564 U.S. 721 (2011)....................6

*Buckley v. Valeo*,
424 U.S. 1 (1976)....................4, 10

*Bullock v. Carter*,
405 U.S. 134 (1972)....................6

*Carey v. Brown*,
447 U.S. 455 (1980)....................8

*Chamber of Com. of the U.S. v. Bartolomeo*,
No. 3:22-cv-1373 (D. Conn.)....................2, 11

*Chamber of Com. of the U.S. v. Brown*,
554 U.S. 60 (2008)....................2, 11

*Chamber of Com. of the U.S. v. FEC*,
69 F.3d 600 (D.C. Cir. 1995)....................1

*Chamber of Com. of the U.S. v. Moore*,
288 F.3d 187 (5th Cir. 2002)....................1

*Chamber of Com. of the U.S. v. NLRB*,
118 F. Supp. 3d 171 (D.D.C. 2015)....................2, 11

*Citizens United v. FEC*,
558 U.S. 310 (2010)....................1, 3, 8, 9

*Davis v. FEC*,
554 U.S. 724 (2008)....................6

*Elections Bd. of Wis. v. Wis. Mfrs. & Com.*,
597 N.W.2d 721 (Wis. 1999)....................1

*FEC v. Beaumont*,
539 U.S. 146 (2003) ........ 8, 10

*FEC v. Mass. Citizens for Life, Inc.*,
479 U.S. 238 (1986) ........ 1

*First Nat'l Bank of Bos. v. Bellotti*,
435 U.S. 765 (1978) ........ 4

*Grayned v. City of Rockford*,
408 U.S. 104 (1972) ........ 8

*Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*,
585 U.S. 878 (2018) ........ 10

*Kleindienst v. Mandel*,
408 U.S. 753 (1972) ........ 5

*Lac Vieux Desert Band of Lake Superior Chippewa Indians v. Mich. Gaming Control Bd.*,
172 F.3d 397 (6th Cir. 1999) ........ 8

*McConnell v. FEC*,
540 U.S. 93 (2003) ........ 1

*McCutcheon v. FEC*,
572 U.S. 185 (2014) ........ 4, 8

*Mills v. Alabama*,
384 U.S. 214 (1966) ........ 4

*Murthy v. Missouri*,
603 U.S. 43 (2024) ........ 4

*NAACP v. Alabama ex rel. Patterson*,
357 U.S. 449 (1958) ........ 3, 4

*Nat'l Inst. of Fam. & Life Advocs. v. Becerra*,
585 U.S. 755 (2018) ........ 7

*Police Department of Chicago v. Mosley*,
408 U.S. 92 (1972) ........ 7, 8

*Protect My Check, Inc. v. Dilger*,
176 F. Supp. 3d 685 (E.D. Ky. 2016) ........ 10

*Reed v. Town of Gilbert*,
576 U.S. 155 (2015) ........ 7

*Republican Party of Minn. v. White*,
536 U.S. 765 (2002)....................1

*Roberts v. U.S. Jaycees*,
468 U.S. 609 (1984)....................3, 4

*Schickel v. Dilger*,
925 F.3d 858 (6th Cir. 2019)....................8

*Thomas v. Collins*,
323 U.S. 516 (1945)....................12

*Turner Broad. Sys., Inc. v. FCC*,
512 U.S. 622 (1994)....................7

*UAW, Local Union 1112 v. Blackwell*,
No. 05-cvh-03-2553, 2005 WL 991248 (Ohio Ct. Comm. Pl. Mar. 7, 2005)....................5

*UAW, Local Union 1112 v. Philomena*,
700 N.E. 2d 936, 121 Ohio App.3d 760 (Ohio Ct. App. 10th Dist. 1998)....................5

*Williams v. Rhodes*,
393 U.S. 23 (1968)....................8

*Williams-Yulee v. Fla. Bar*,
575 U.S. 433 (2015)....................9

*Wis. Right to Life, Inc. v. FEC*,
546 U.S. 410 (2006)....................1

**Statutes**

Ohio Rev. Code § 3599.03....................5, 11

**Other Authorities**

3 Smolla & Nimmer on Freedom of Speech (Sept. 2024 ed.)....................7

Amicus Brief of Chamber of Commerce of United States of America,
*Interpipe Contracting, Inc. v. Becerra*,
Nos. 18-1065, 18-1092 (S. Ct. 2019)....................2, 11

Amicus Brief of the Chamber of Commerce of the United States,
ECF No. 141, *Minn. Chamber of Com. v. Choi*,
No. 0:23-cv-02015, (D. Minn. Aug. 6, 2024)....................1

Amicus Brief of the Chamber of Commerce of the United States,
ECF No. 29, *Dinner Table Action v. Schneider*, No. 1:24-cv-00430, (D. Me.
Jan. 27, 2025)....................1

The Federalist No. 10 (James Madison) ....................3

Ohio Campaign Finance Handbook, Office of Ohio Secretary of State, Campaign Finance Division (last revised May 2022), *available at* https://tinyurl.com/3h3zykta ....................5

## INTEREST OF *AMICUS CURIAE*

The Chamber of Commerce of the United States of America (the "Chamber") is the world's largest business federation. It represents approximately 300,000 direct members and indirectly represents the interests of more than 3 million companies and professional organizations of every size, in every industry sector, and from every region of the country. An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts. To that end, the Chamber regularly files *amicus curiae* briefs in cases, like this one, that raise issues of concern to the nation's business community.

The Chamber plays a key role in advancing the First Amendment rights of its members, many of whom are corporations. In that capacity, the Chamber was a party to the *McConnell v. FEC*, 540 U.S. 93 (2003) litigation that challenged the facial constitutionality of an electioneering communication ban on corporate political speech. The Chamber also regularly files *amicus curiae* briefs where the business community's right to political speech and association is at stake. *See, e.g.*, *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Am. Tradition P'ship, Inc. v. Bullock*, 567 U.S. 516 (2012); *Citizens United v. FEC*, 558 U.S. 310 (2010); *Wis. Right to Life, Inc. v. FEC*, 546 U.S. 410 (2006); *Republican Party of Minn. v. White*, 536 U.S. 765 (2002); *Elections Bd. of Wis. v. Wis. Mfrs. & Com.*, 597 N.W.2d 721 (Wis. 1999); *FEC v. Mass. Citizens for Life, Inc.*, 479 U.S. 238 (1986); Amicus Brief of the Chamber of Commerce of the United States, ECF No. 29, *Dinner Table Action v. Schneider*, No. 1:24-cv-00430, (D. Me. Jan. 27, 2025); Amicus Brief of the Chamber of Commerce of the United States, ECF No. 141, *Minn. Chamber of Com. v. Choi*, No. 0:23-cv-02015, (D. Minn. Aug. 6, 2024). And the Chamber has litigated to preserve its own First Amendment rights of speech and association. *See, e.g.*, *Chamber of Com. of the U.S. v. Moore*, 288 F.3d 187 (5th Cir. 2002); *Chamber of Com. of the U.S. v. FEC*, 69 F.3d 600 (D.C. Cir. 1995).

Many of the cases in which the Chamber has been a party or filed an *amicus curiae* brief have, like the present dispute, concerned laws governing labor organizations and their impact on the First Amendment rights of other associations. *See, e.g.*, *Chamber of Com. of the U.S. v. Brown*, 554 U.S. 60 (2008); *Chamber of Com. of the U.S. v. Bartolomeo*, No. 3:22-cv-1373 (D. Conn.); Amicus Brief of Chamber of Commerce of United States of America, *Interpipe Contracting, Inc. v. Becerra*, Nos. 18-1065, 18-1092 (S. Ct. 2019); *Chamber of Com. of the U.S. v. NLRB*, 118 F. Supp. 3d 171 (D.D.C. 2015). In this respect, the Chamber provides a distinct perspective on the importance of putting corporations and other associations on the same footing as labor organizations.

Ohio's discriminatory ban on political contributions by corporations impermissibly elevates labor organizations above all others in violation of the Equal Protection Clause and the First Amendment. The Chamber has a strong interest in ensuring that businesses and associations have a fair opportunity to participate in the American political system, as is their constitutional right.

## INTRODUCTION

For decades, democracy in Ohio has been an uneven playing field. State law accords labor organizations preferential treatment over corporations and other non-labor associations. Unions can make political contributions to candidates; corporations cannot. But corporations and associations like the Chamber play a key role in ensuring individuals' freedom to associate and express themselves politically, and Ohioans suffer when these entities are excluded. The State's elevation of a certain class of organizations over others interferes with the ability of voters to evaluate candidates competing for office and necessarily promotes a pro-labor viewpoint over others. This asymmetric burdening of fundamental rights cannot be justified under the First Amendment and Equal Protection Clause. The Constitution does not permit the State to play

favorites. Ohio's regime comes nowhere close to surviving scrutiny because the State cannot identify a governmental interest compelling enough to justify its uneven treatment of corporations and labor unions.

## ARGUMENT

### I. CORPORATIONS AND OTHER GROUPS PLAY A CRUCIAL ROLE IN THE AMERICAN POLITICAL SYSTEM

Ohio's selective prohibition on corporate contributions is at odds with some of the most foundational assumptions of American democracy, going back to the Republic's founding. The Framers considered the ability of individuals to associate with each other to be "essential to political life" and sought to protect that right, even if it risked encouraging the formation of factions—something they famously hated. The Federalist No. 10 (James Madison). Following the Revolution, the States chose to enshrine the right of citizens to associate with each other in the Constitution, and the nation subsequently confirmed that right with the ratification of the Fourteenth Amendment. As the Supreme Court has noted, "[i]t is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech." *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460 (1958). The Constitution thus protects the right of association as both "a fundamental element of personal liberty" and as "an indispensable means of preserving" First Amendment freedoms. *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984).

Freedom of association encompasses the right of corporations and other groups of individuals to have their voices heard through participation in the democratic process. *See Citizens United*, 558 U.S. at 342 (quoting *First Nat'l Bank of Bos. v. Bellotti*, 435 U.S. 765, 784 (1978)) ("[P]olitical speech does not lose First Amendment protection 'simply because its source is a

corporation.'"). Indeed, the Supreme Court has long recognized that "[e]ffective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association" in light of "the close nexus between the freedoms of speech and assembly." *NAACP*, 357 U.S. at 460. It follows that individual First Amendment freedoms "could not be vigorously protected from interference by the State unless a correlative freedom to engage in group effort toward those ends were not also guaranteed." *Roberts*, 468 U.S. at 622.

Protecting the right of corporations and other groups to associate freely and to express themselves electorally is essential to ensuring a functioning democracy. *See Buckley v. Valeo*, 424 U.S. 1, 14–15 (1976) ("In a republic where the people are sovereign, the ability of the citizenry to make informed choices among candidates for office is essential"). Indeed, "[w]hatever differences may exist about interpretations of the First Amendment, there is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs." *Mills v. Alabama*, 384 U.S. 214, 218 (1966). In fact, government by the people is impossible if, as here, the state favors the political advocacy of certain classes over others. As the Supreme Court has emphasized, the First Amendment "has its fullest and most urgent application precisely to the conduct of campaigns for political office." *McCutcheon v. FEC*, 572 U.S. 185, 191–92 (2014) (plurality opinion) (quoting *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272 (1971)).

Consequently, any attempt by the state to exclude a particular class of participants from the political discourse is an affront to democratic governance. Corporations and other associations have just as much right to participate as unions and labor organizations. And voters deserve to hear all voices and perspectives. *See Murthy v. Missouri*, 603 U.S. 43, 75 (2024) ("we have recognized a First Amendment right to receive information and ideas" (internal quotation marks omitted)); *see First Nat'l Bank of Bos.*, 435 U.S. at 783 ("[T]he First Amendment goes beyond

protection of the press and the self-expression of individuals to prohibit government from limiting the stock of information from which members of the public may draw."); *see Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972) (It is thus "well established that the Constitution protects the right to receive information and ideas."). A law that provides special political rights to labor unions runs afoul of this fundamental, longstanding constitutional principle essential to the American system of government.

## II. OHIO'S LAW IMPERMISSIBLY ELEVATES LABOR ORGANIZATIONS ABOVE CORPORATIONS

Ohio's law undermines constitutionally protected political association—violating the First Amendment and Equal Protection Clause—because it provides preferential treatment to one type of association or organization above others. Although the statute on its face prohibits *both* corporations and labor organizations from making political contributions, *see* Ohio Rev. Code § 3599.03(A)(1), Ohio ceased enforcing the prohibition against labor organizations nearly thirty years ago. *See UAW, Local Union 1112 v. Philomena*, 700 N.E. 2d 936, 121 Ohio App.3d 760 (Ohio Ct. App. 10th Dist. 1998); *see also UAW, Local Union 1112 v. Blackwell*, No. 05-cvh-03-2553, 2005 WL 991248 (Ohio Ct. Comm. Pl. Mar. 7, 2005) (preliminarily enjoining Section 3599.03(A)); Ohio Campaign Finance Handbook, Office of Ohio Secretary of State, Campaign Finance Division, at 1-8, 8-1, 8-11 (last revised May 2022), *available at* https://tinyurl.com/3h3zykta (stating that labor organizations—but not corporations—may make political contributions). Ohio law therefore permits labor organizations to make political contributions to candidates while strictly prohibiting corporations from doing so. Such an asymmetrical regime, which inhibits the fundamental right of corporations and associations to participate in the electoral process, cannot be reconciled with either the First Amendment or the Equal Protection Clause.

### A. The First Amendment And Equal Protection Clause Mandate An Even Playing Field

The First Amendment prohibits the government from artificially elevating the political expression or association of some over others. That is not a controversial proposition. Indeed, the United States Supreme Court made it unambiguously clear in *Davis v. FEC* when it invalidated a provision of the Bipartisan Campaign Reform Act of 2002, Pub. L. No. 107–155, 116 Stat. 81. *See* 554 U.S. 724 (2008) (holding that Sections 319(a) and (b) violate the First Amendment). Under that provision, candidates financing their campaigns from their own wealth were subject to stricter contribution limits than their opponents. As the Court explained when rejecting the regime, "[t]he argument that a candidate's speech may be restricted in order to 'level electoral opportunities' has ominous implications because it would permit Congress to arrogate the voters' authority to evaluate the strengths of candidates competing for office." *Id.* at 742.

The Court reached the same conclusion three years later in *Arizona Free Enterprise Club's Freedom Club PAC v. Bennett*, when it rejected a campaign finance system that calculated a publicly funded candidate's funding allocation based on how much his privately financed opponent had raised. *See* 564 U.S. 721, 728–29 (2011). The attempt to achieve monetary parity did not excuse disparate treatment: "Leveling the playing field' can sound like a good thing. But in a democracy, campaigning for office is not a game." *Id.* at 750.

When it comes to regulating the ability of Americans to engage in political speech or to associate with each other, the First Amendment does not tolerate a double standard. Ohio cannot forbid corporate contributions while giving license to labor organizations to engage in precisely the same conduct.

This constitutional imperative is reinforced by the Equal Protection Clause. *See Bullock v. Carter*, 405 U.S. 134, 140–41 (1972) ("Although we have emphasized on numerous occasions the

breadth of power enjoyed by the States in determining voter qualifications and the manner of elections, this power must be exercised in a manner consistent with the Equal Protection Clause of the Fourteenth Amendment."). Both the Equal Protection Clause and the First Amendment prohibit such discrimination because it "run[s] the risk that 'the State has left unburdened those speakers whose messages are in accord with its own views.'" *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755, 778 (2018) (quoting *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 580 (2011)). Thus, even facially content-neutral "laws favoring some speakers over others demand strict scrutiny when the legislature's speaker preference reflects a content preference." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 658 (1994); *see also Reed v. Town of Gilbert*, 576 U.S. 155, 170–71 (2015) (observing that the fact that a statutory distinction is speaker-based does not render it content neutral); 3 Smolla & Nimmer on Freedom of Speech § 22:19 (Sept. 2024 ed.) ("Speaker-based discrimination normally triggers strict scrutiny due to its close illicit kinship to content-based discrimination.").

There should be little question that the mandate of the First Amendment and Equal Protection Clause—that the government must treat political participants equally—applies with full force here. Indeed, time and again, the Supreme Court has applied this constitutional principle to invalidate laws designed to favor labor organizations and viewpoints. In *Police Department of Chicago v. Mosley*, for example, the Court held that a Chicago ordinance prohibiting all picketing within 150 feet of a school—*except for picketing of a labor dispute*—violated the Constitution because the ordinance purported to distinguish between peaceful labor picketing and other peaceful picketing. *See* 408 U.S. 92 (1972). Simply put, "government may not grant the use of a forum to people whose views it finds acceptable, but deny use to those wishing to express less favored or more controversial views . . . . There is an 'equality of status in the field of ideas,' and

government must afford all points of view an equal opportunity to be heard." *Id.* at 96 (quoting A. Meiklejohn, *Political Freedom: The Constitutional Powers of The People* 27 (1948)); *see also Grayned v. City of Rockford*, 408 U.S. 104, 107 (1972) (invalidating "identical" ordinance on equal protection grounds). As the Court would explain several years later when invalidating another pro-labor picketing prohibition, the Constitution forbids the government from suppressing political conduct of a subset of actors on the basis that "labor picketing is more deserving of First Amendment protection than are public protests over other issues." *Carey v. Brown*, 447 U.S. 455, 466 (1980). Doing so violates both the First Amendment and Equal Protection Clause. *See id.* at 464 (quoting *Mosley*, 408 U.S. at 96).

### B. Ohio Law Cannot Justify Providing Special Treatment To Unions

To justify unevenly "imposing such heavy burdens on the right to vote and to associate," under both the First Amendment and Equal Protection Clause, the government must show a "compelling interest." *Williams v. Rhodes*, 393 U.S. 23, 31 (1968); *see Mosley*, 408 U.S. at 101 ("The Equal Protection Clause requires that statutes affecting First Amendment interests be narrowly tailored to their legitimate objectives."); *Lac Vieux Desert Band of Lake Superior Chippewa Indians v. Mich. Gaming Control Bd.*, 172 F.3d 397, 410 (6th Cir. 1999) (strict scrutiny applied where political speech was implicated).[1] Ohio comes nowhere close to doing so here.

Ohio must show a legitimate interest in its discriminatory ban on corporate political contributions relative to those of labor organizations. *See Citizens United*, 558 U.S. at 340 ("Prohibited, too, are restrictions distinguishing among different speakers, allowing speech by

[1] The parties dispute whether "closely drawn" scrutiny applies instead, citing, among other cases, *FEC v. Beaumont*, 539 U.S. 146, 162 (2003), and *Schickel v. Dilger*, 925 F.3d 858, 878 (6th Cir. 2019), both of which dealt with the ban on direct contributions. Regardless of how the test is framed, "if a law that restricts political speech does not 'avoid unnecessary abridgement' of First Amendment rights, it cannot survive 'rigorous' review." *McCutcheon*, 572 U.S. at 199 (citation omitted) (quoting *Buckley*, 424 U.S. at 25). Ohio's law fails under either standard.

some but not others."). None of the Defendants' purported interests—deterring *quid pro quo* corruption and its appearance or the circumvention of individual contribution limits—are specific to corporations as a class such that they do not similarly apply to labor organizations. Thus, Ohio's decision to look the other way when it comes to union contributions raises a "red flag" that the "law does not actually advance a compelling interest." *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 449 (2015) ("Underinclusiveness can also reveal that a law does not actually advance a compelling interest.").

At bottom, Ohio fails to identify any differences between labor unions and corporations that would provide a legitimate justification for treating them differently. While labor unions may have different structures or aims than those of corporations, the relevant inquiry is whether those differences justify differing treatment. Relying on *Blackwell*, the Commission Defendants[2] cite, among other differences, corporations' ability to accumulate wealth with the help of their corporate form granted by the state. *See* Commission Defendants' Opposition to Plaintiffs' Motion for Summary Judgment and Cross-Motion for Summary Judgment ("Commission Br."), ECF No. 28 at PageID 270–71. But the Supreme Court has expressly rejected distinguishing corporations on this basis. *See Citizens United*, 558 U.S. at 351 (rejecting the anti-distortion rationale of and overruling *Austin v. Mich. Chamber of Com.*, 494 U.S. 652 (1990)). The Commission Defendants also cite unions' supposedly greater accountability to their membership, *see* Commission Br., ECF No. 28 at PageID 267, 270, but fail to tie this alleged distinction to a rationale for differing treatment. Moreover, the Supreme Court has expressly rejected the argument that shareholders are somehow powerless to influence the political agenda advanced by corporate leadership. *See*

---

[2] The "Commission Defendants" include the Ohio Election Commission, Charleta B. Tavares, Christina M. Hagan, Stephen Caraway, Shayla L. Davis, Karl C. Kerschner, Ernest C. Knight, and John A. Lyall.

*Citizens United*, 558 U.S. at 361–62 (quoting *First Nat'l Bank of Bos.*, 435 U.S. at 794) ("There is . . . little evidence of abuse that cannot be corrected by shareholders 'through the procedures of corporate democracy.'"). In fact, there is no question that unions have proven willing to advocate for political positions opposed by their members. *See Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 585 U.S. 878 (2018) (public-sector unions compelled employees to subsidize private speech).

In the end, the Commission Defendants are left with their claim that "[b]usiness entities are better suited to facilitate circumvention of individual contribution limits" because it is supposedly easier to organize a corporation. Commission Br., ECF No. 28 at PageID 270–71. But even assuming that generalization were true, labor unions, like "nonprofit advocacy corporations," are "no less susceptible than traditional business companies to misuse as conduits for circumventing the contribution limits imposed on individuals." *Beaumont*, 539 U.S. at 160.

Simply put, "the concept that government may restrict the speech of some elements of our society in order to enhance the relative voice of others is wholly foreign to the First Amendment . . . ." *Buckley*, 424 U.S. at 48–49 (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 266 (1964)). The First Amendment and Equal Protection Clause do not allow Ohio to give unions a special pass. The State has offered nothing to justify such egregiously uneven treatment.

## III. CORPORATIONS AND UNIONS MUST HAVE AN EQUAL VOICE

Ohio's preferential treatment of labor organizations is not just a theoretical problem—it has proven time and again to undermine the democratic process. The law, and similar restrictions elsewhere, favor *by design* candidates with a "pro-labor" message and therefore skew the information—and ultimately, the choices—available to voters. *See, e.g.*, *Protect My Check, Inc. v. Dilger*, 176 F. Supp. 3d 685, 691 (E.D. Ky. 2016) (granting preliminary injunction because Kentucky had "not sufficiently explained why corporations should be treated differently from

unions"). Messages and candidates that are not considered "pro-labor" are suppressed because violations of the corporate contribution ban are subject to punishment by fine and even imprisonment. *See* Ohio Rev. Code § 3599.03(A)(2), (B)(2). Political speech and association can never be truly free so long as the government is permitted to silence an entire class of political participants.

To ensure that corporations and other associations of Americans enjoy the same freedom to participate in democratic government, the Chamber has successfully waged a years-long campaign fighting against government attempts to stack the deck in favor of labor organizations. In 2008, the Chamber challenged a California statute prohibiting certain employers from, among other things, doing anything to "deter union organizing." *Chamber of Com. of the U.S. v. Brown*, 554 U.S. 60, 62–64 (2008). The Supreme Court ruled for the Chamber, holding that such a policy conflicted with federal law and stating that the Court has long recognized "the First Amendment right of employers to engage in noncoercive speech about unionization." *Id.* at 67.

In 2015, the Chamber likewise was a party in *Chamber of Commerce of the United States of America v. National Labor Relations Board*, where it challenged the legality of a federal regulation that frustrated the ability of employers to participate meaningfully in union elections. *See* 118 F. Supp. 3d 171 (D.D.C. 2015). And the Chamber continues to litigate a case in the District of Connecticut, where the State, in response to union lobbying efforts, now prohibits employers from expressing their views on unionization during meetings with employees. *See Chamber of Com. of the U.S. v. Bartolomeo*, No. 3:22-cv-1373 (D. Conn.). The Chamber stands ready to challenge any attempt by the government to mandate or favor pro-labor speech. *See, e.g.*, Amicus Brief of Chamber of Commerce of the United States, *Interpipe Contracting, Inc. v.*

*Becerra*, Nos. 18-1065, 18-1092 (S. Ct. 2019) (challenging California law subsidizing pro-union speech and penalizing employers' pro-open-shop viewpoint).

The American political system depends on citizens having the right to associate with whomever they please and to speak freely on issues of political concern. When the state plays favorites, elevating pro-labor interests above others, political discourse—and ultimately democratic government itself—suffers. As the Supreme Court has long recognized, the right "to discuss, and inform people concerning, the advantages and disadvantages of unions and joining them is protected not only as part of free speech, but as part of free assembly." *Thomas v. Collins*, 323 U.S. 516, 532 (1945). The Chamber will continue to fight against efforts to undermine this fundamental American principle, both here in Ohio and throughout the United States.

## CONCLUSION

Because Ohio's preference for labor organizations violates the Equal Protection Clause and First Amendment, the Court should declare the law unconstitutional and enjoin its enforcement.

Dated: February 14, 2025

CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA
By Counsel

/s/ James A. King

James A. King (0040270)
Trial Attorney
PORTER, WRIGHT, MORRIS & ARTHUR LLP
41 South High Street, Suites 2800 – 3200
Columbus, Ohio 43215
Telephone: (614) 227-2051
Facsimile: (614) 227-2100
JKing@porterwright.com

Caleb P. Burns (*pro hac vice* forthcoming)
William K. Lane III (*pro hac vice* forthcoming)
Daniel T. Park (*pro hac vice* forthcoming)
WILEY REIN LLP
2050 M Street NW
Washington, DC 20036
Telephone: (202) 719-7000
Facsimile: (202) 719-7049
cburns@wiley.law
wlane@wiley.law
dpark@wiley.law

*Counsel for* Amicus Curiae *Chamber of Commerce of the United States of America*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 14, 2025, I electronically filed the above paper with the Clerk of Court using the ECF system, which sends notifications to such filing of all counsel of record.

Dated: February 14, 2025

/s/ James A. King
James A. King